## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## DELTA DIVISION

JARELL D. TERRY                                          PLAINTIFF
ADC #149998C

V.                        No. 2:20-CV-145-BSM-JTR

DEVINE MAIDEN, Lieutenant, ADC;
DENNIS UGBAJA, Sergeant, ADC;
and MYA CONEY, Corporal, ADC                              DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Miller may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

## I.    Introduction

Plaintiff Jarell D. Terry ("Terry"), a prisoner in the East Arkansas Maximum Unit ("EAMU") of the Arkansas Division of Correction ("ADC"), filed this § 1983 action alleging violations of his constitutional rights.

After screening the Complaint, Terry was allowed to proceed with claims that:
(1) Lieutenant Devine Maiden ("Maiden") and Sergeant Dennis Ugbaja ("Ugbaja")
harassed him; conspired to deny him medical care; and subjected him to
unconstitutional conditions of confinement; (2) Ugbaja used excessive force against
him on May 11, 2020; and (3) Assistant Director William Straughn ("Straughn") and
Director Dexter Payne ("Payne") failed to take corrective action when notified of
Maiden and Ugbaja's alleged constitutional violations. *Doc. 18*. Terry was later
allowed to amend his Complaint to pursue a claim that Corporal Mya Coney failed
to intervene during the May 11, 2020 excessive force incident. *Doc. 107*.

On December 29, 2021, Judge Miller entered an Order granting Defendants'
Motion for Partial Summary Judgment on all Terry's claims against Straughn and
Payne and some of his claims against Ugbaja and Maiden because he failed to fully
and properly exhaust his administrative remedies on those claims before he initiated
this action. *Doc. 114*. Thus, Terry's only remaining claims are the following:

A.    On May 11, 2020, Ugbaja used excessive force against him;

B.    Coney failed to intervene in the May 11 excessive force incident; and

C.    From April 29, 2020 through May 14, 2020, Maiden sexual harassed
      him in the shower.

Terry and Ugbaja have filed cross-Motions for Summary Judgment
addressing the merits of the May 11, 2020 excessive force incident (*Doc. 144; Doc.
151*). Coney has filed a Motion for Summary Judgment arguing that Terry failed to

2

exhaust his administrative remedies regarding the failure to intervene claim (*Doc. 129*). Finally, Terry has filed a Motion for Voluntary Dismissal of his claims against Maiden (*Doc. 142*) and a Motion for Preliminary Injunction (*Doc. 135*).

The Court will consider each of these fully and properly joined Motions separately.

## II.   Discussion

### A.   Terry and Ugbaja's Cross-Motions for Summary Judgment

On July 11, 2022, Terry filed a Motion for Summary Judgment (*Doc. 144*) and Statement of Facts (*Doc. 145*) preemptively arguing that Ugbaja is not entitled to qualified immunity and that the undisputed facts show that Ugbaja "maliciously and sadistically" used excessive force against him "causing lasting and frequent" injuries. *Doc. 144 at 8*.

In support of his Motion, Terry relies on: (a) two Declarations he signed under penalty of perjury (*Doc. 145 at 8–10*); (b) his medical records from the date of the excessive force incident, May 11, 2020, through August 24, 2020 (*Doc. 145 at 11–18*); (c) disciplinary records related to the May 11 incident (*Doc. 145 at 19–22*); and (d) the surveillance video of the incident previously submitted to the Court under seal (*Doc. 150*).

On August 3, 2022, Ugbaja filed a combined "Response in Opposition to Terry's Motion for Summary Judgment" and "Cross-Motion for Summary

Judgment" (*Doc. 151*), a Brief in Support (*Doc. 153*), a Response to Terry's Statement of Facts (*Doc. 154*) and his own Statement of Facts (*Doc. 152*). Ugbaja argues that: Terry's actions justified the reasonable and necessary force he applied; Terry has failed to provide affirmative evidence that Ugbaja acted maliciously or sadistically; and he is entitled to qualified immunity.

Ugbaja relies on: (a) his own sworn Declaration (*Doc. 151-1*); (b) Conley's sworn Declaration (*Doc. 151-2*); (c) the ADC's Internal Affairs Investigation report that found that the force used was necessary and complied with ADC policy (*Doc. 151-3*); (d) Terry's Deposition (*Doc. 151-4*); and (e) the surveillance video of the May 11 incident (*Doc. 150*).

Terry filed Responses to Ugbaja's Motion for Summary Judgment and Statement of Disputed Facts (*Doc. 159; Doc. 160*) and a Reply to Ugbaja's Response to his own Statement of Facts (*Doc. 156*).[1]

---

[1]Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

### 1.  Undisputed Material Facts

Based on a review of the video of the incident, Terry's Statement of Facts, Ugbaja's Statement of Facts, and the supporting evidence, the following undisputed events took place on May 11, 2020.

(a)    In the early morning hours of May 11, 2020, Sergeant Ugbaja and Corporal Coney escorted Terry from a hall cage to a cell in punitive isolation. During the walk, Terry, whose hands were restrained behind his back, directed profanity and insults at Ugbaja. Terry testified he became "so enraged" that he wanted to fight Ugbaja. Terry Dep. 16:2–5, *Doc. 262-4 at 17*.

(b)    While standing outside Terry's assigned isolation cell, Terry admits to yelling, "fuck you bitch ass n**** you gone have to fight me now I want some pain." *Doc. 145 at 8, ¶ 6*. Ugbaja then took Terry down to the floor, where he remained face down, with Ugbaja using his weight for about thirty seconds to keep Terry on the floor. Video of Incident (*Doc. 150*), Camera 19 at 04:50:16–04:50:46. Then, Ugbaja stood over Terry, bending at the waist to keep Terry on the floor for about one-and-a-half minutes before other officers arrived and escorted Terry to the infirmary. *Id.* at 04:50:46–04:52:15. No blows were exchanged during the incident. *Id.* at 04:50:16–04:52:15; Terry Dep. 16:6–15, *Doc. 151-4 at 17*.

(c)    After the incident, Terry was escorted to the infirmary where he complained of "pain to jaw area and upper back." *Doc. 145 at 11*. The nurse noted

that there was no "asymmetry, swelling, redness, or open areas." *Id.*[2] Terry continued to seek treatment for his back pain until at least August 24, 2020, when a scan of his thoracic spine revealed mild scoliosis, a condition unrelated to the incident. *Doc. 145 at 18*. He had "[n]o acute fracture or aggressive osseous lesion" and his thoracic spine radiographs were "otherwise unremarkable." *Id.*

## 2. The Disputed Facts Are Not Material to Determining the Motions for Summary Judgment

Terry and Ugbaja dispute whether Ugbaja directed profanity, insults, and threats back at Terry[3] and whether Terry spit or lunged at Ugbaja directly prior to the use of force.[4] They also dispute the amount and nature of the force Ugbaja used to take Terry to the ground and to keep him restrained on the floor.[5] However, as

---

[2] Pictures taken of Terry's face, jaw, and back at the infirmary confirm this observation. *Doc. 151-3 at 35, 38–40*.

[3] Terry avers that, while Ugbaja was placing him in hand restraints, he told Terry, "don't make no sudden movements you already on my bad side." Terry Decl., *Doc. 145 at 8, ¶ 2*. Then, during the walk, Ugbaja said "fuck yo momma." *Doc. 145 at 8, ¶ 6*. According to Terry, it was this statement that caused him to respond, "fuck you bitch ass n**** you gone have to fight me now I want some pain." *Id.*

In contrast, in his Declaration, Ugbaja swears that he did *not* threaten Terry. Ugbaja Decl., *Doc. 151-1 at 2, ¶ 8*. Coney's Declaration is silent on the matter. *See* Coney Decl., *Doc. 151-2*.

[4] Terry states that, "At no time did I spit at or towards Ugbaja nor was I combative, or charged at nor evade Ugbaja." *Doc. 145 at 9*.

Ugbaja swears that, "Terry lunged towards me as if he was going to headbutt me, and spit on my right jaw and collar." *Doc. 151-1 at 1, ¶ 6*. Coney states that she "heard someone spit [and] turned and saw Terry in close proximity to Ugbaja's face and saw him try to pull away from Ugbaja." *Doc. 151-2 at 1, ¶ 5*. She further states that she "did see wet spots consistent with spit on Ugbaja's collar." *Doc. 151-2 at 2, ¶ 8*.

[5] Terry states that Ugbaja grabbed him by his legs, lifted him in the air, and slammed him to the floor. *Doc. 145 at 9, ¶ 10*. Ugbaja then applied pressure to his back by "plac[ing] either both knees or one knee" on his back. *Id., ¶ 11*. In his deposition, Terry testifies that Ugbaja grabbed

explained later, the video of the incident is consistent with Ugbaja's description of the force he used and in direct conflict with Terry's description of the force used by Ugbaja.

At the summary judgment stage, the Court may *not* make credibility determinations or weigh evidence in favor of one party's version against the other. *Coker v. Arkansas State Police*, 734 F.3d 838, 843 (8th Cir. 2013) ("[I]t is not [the court's] function to remove the credibility assessment from the jury."). However, the Court may disregard facts provided by a party which are "so utterly discredited by the record that no reasonable jury could [] believe[] him." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Both the EAMU surveillance video of the incident (*Doc. 50*) and photographs taken of Terry after the incident (*Doc. 151-3 at 35, 38–40*) completely discredit the nature and extent of the force Terry claims Ugbaja used during the incident.

**<u>Video Footage</u>.** Defendants submitted video footage from five separate EAMU cameras with video coverage ranging from 3:45 to 5:08 the morning of May

---

him in the "thigh area or probably like the knee area…airlifted me" and "slammed me on the face…put both his knees in my back and balled his fist up and said he was about to punch me." *Doc. 151-4 at 28, 17*. There is nothing in the video that appears to support Terry's version of what took place during the incident. *Doc. 50*.

Ugbaja states "I grabbed [Terry] by the torso, rolled back onto the ground, and pulled him down with me to regain control over him" and "[t]o keep him on his stomach on the floor, I straddled him and held him down with my arm. Then I stood up off the floor while holding him down. At no point did I use my knees to hold him down." *Doc. 151-1 at 1–2, ¶¶ 5–6*. Coney's Declaration states that she "did not see Ugbaja place his knees on Terry's back." *Doc. 151-2 at 1, ¶ 7*. The video of the incident supports the testimony of Ugbaja and Coney. *Doc. 50*.

11, 2019. *Doc. 50*. Starting at 4:46:43, the video shows Ugbaja and Coney escorting Terry from the hall cage to his isolation cell. Video, Camera 20 ("ISO 2 C") and Camera 17 ("ISO 2 West"). Terry has his hands restrained behind his back and Ugbaja walks slightly behind and to the right of Terry, with his left hand gripping Terry's upper inner right arm. For most of the walk, Ugbaja and Terry walk slowly and steadily with Coney trailing slightly behind with a piece of paper in her hand. At one point, Coney shows Terry the piece of paper and he leans over to look at it.

At 4:47:57, Terry and Ugbaja turn to face each other in "ISO 2 West." There is no sound recording for any of the cameras, so it is unknown why the two turned to face each other and, due to the quality and distance of the video camera, it is impossible to tell if the two are even exchanging words. Approximately 15 seconds later, Terry, Ugbaja, and Coney continue walking. They walk to the end of the hallway in "ISO 2 West" and, for unknown reasons, turn and walk back down the entirety of the hallway.[6]

At 4:49:32, the parties enter "ISO 2 East" (Camera 19). It appears that Ugbaja and Terry are talking to each other, while Coney walks directly behind them. For approximately 20 seconds the parties walk down the hallway away from the camera.

---

[6] In his Declaration, Terry speculates that Ugbaja and Coney purposely tried to escort him "down the opposite wing" from his assigned cell. He alleges that he told them "I'm not going off camera so you can do anything to me." He then turned and "went the proper way." *Doc. 145 at 8, ¶ 5*. Ugbaja disputes this allegation (*Doc. 154 at 2, ¶ 6*) and the Court will not consider Terry's speculation or hearsay statement, especially since it appears there were cameras in all the hallways at EAMU.

At 4:49:54, Ugbaja and Terry turn to face a door—which all parties agree is Terry's assigned isolation cell—on the right side of the hallway. Coney stands with her back to the camera partially blocking the camera's view of Ugbaja and Terry

Terry then begins to pace back and forth. It appears that, while Terry is pacing back and forth, Ugbaja keeps his left hand gripping Terry's right arm for the first few paces. Then Ugbaja switches to standing behind Terry's left side.

At 4:50:15, Ugbaja grabs Terry from behind by both shoulders, and uses a hip roll to take Terry to the floor. Ugbaja and Terry fall down together, and Ugbaja then rolls Terry on his stomach.

By 4:50:23, Ugbaja has Terry face down on the ground and is leaning over him. Ugbaja either rest his right knee on Terry's back (as Terry alleges) or Ugbaja straddles Terry's body with his knees on either side of Terry (as Ugbaja contends). If Ugbaja *did* have his knee in Terry's back, he did so for *no more than five seconds*—not for "around 30 seconds" as Terry estimated in his deposition. Terry Dep. 28:25–30:2, *Doc. 151-4 at 29–31*. By 4:50:28, Ugbaja is clearly straddling Terry as another prison official approaches. *Id.* at 04:50:28. During Ugbaja's use of force, Coney remains standing, mere feet away, and observing.

After the unidentified prison official reaches the scene, at 4:50:38, Ugbaja rises up off his knees and, while continuing to bend over and straddle Terry, uses both hands to keep Terry down on the ground. Ugbaja and Terry remain in this

position for a minute and five seconds. At 4:51:43, a group of prison officials arrive at the scene. Ugbaja then begins holding Terry down with one hand. At 4:52:15, Terry is allowed to get to his feet. In all, Ugbaja uses his hands to apply the force necessary to keep Terry on his stomach on the floor for less than two minutes.

The video directly contradicts Terry's sworn assertions that Ugbaja grabbed him by the legs and lifted him in the air before slamming him to the floor, or that Ugbaja otherwise used any unnecessary force against Terry after he *admittedly* made a direct threat to attack Ugbaja. *Doc. 145 at 9, ¶ 10*; *Doc. 151-4 at 28, 17*. Instead, it supports Ugbaja's statement that, after Terry threatened to attack him, he grabbed Terry by the torso, pulled Terry to the ground with him, and straddled him to gain control. *Doc. 151-1 at 1–2, ¶¶ 5–6*.

**<u>Photographs of Ugbaja's Shirt and Face, and Terry's Face and Back</u>**. Following the May 11 incident, an internal investigation was launched against Ugbaja, and Terry was charged with multiple disciplinaries infractions, including "throwing OR attempting to throw substances, known or unknown, toward or upon another person." *See Doc. 151-3* (emphasis in original).[7] The investigation file

---

[7] ADC Director Dexter Payne, ADC Deputy Director William Straughn, EAMU Warden Gaylon Lay, and Internal Affairs Investigator Amanda Horner all found that Ugbaja's use of force was necessary and complied with ADC policy. *Doc. 151-3 at 1–5*.

Terry was found guilty of "Throwing OR attempting to throw substances, known or unknown, toward or upon another person" and "Insolence to a staff member." *Doc. 146 at 2*. He was found not guilty on all other charges: (1) "Failure to obey verbal and/or written order(s) of staff;" (2) Battery–Use of physical force upon staff;" (3) "Running, avoiding, or otherwise resisting apprehension;" and (4) "Provoking or agitating a fight." *Id.*

includes pictures of Ugbaja's shirt collar and jaw, dated May 11, 2020. *Doc. 151-3 at 36–37*. Presumably, these pictures were taken to show that Terry did, in fact, spit on Ugbaja prior to the use of force. However, the pictures are inconclusive, and do not "utterly discredit" either Ugbaja or Terry's version of events.

Also part of the investigation file are pictures of Terry's face, jaw, and back taken at the infirmary on May 11, 2020. *Doc. 151-3 at 35, 38–40*. These pictures reveal no bruising, swelling, or redness to Terry's face (which Terry alleges was "slammed to the floor") or to his back (where Ugbaja allegedly placed his knee while keeping Terry restrained on the floor).

After rejecting Terry's version of facts that are blatantly contradicted by the video, the only factual questions that remain are whether: (1) Ugbaja exchanged "argumentative" banter with Terry; (2) Terry spit and lunged at Ugbaja immediately prior to the incident; and (3) Ugbaja placed his knee on Terry's back for five seconds. However, because none of these disputed facts are material to the resolution of Terry and Ugbaja's cross-Motions for Summary Judgment, the Court need not resolve those disputes.

### 3.   Ugbaja Is Entitled to Qualified Immunity

Both Terry and Ugbaja address the issue of qualified immunity in their summary judgment papers. Because qualified immunity is an affirmative defense,

the Court will address Ugbaja's Motion for Summary Judgment first, viewing the facts in a light most favorable to Terry.

Thus, for summary judgment purposes only, the Court assumes that: both Terry and Ugbaja were being argumentative during the walk from the hall cage to the isolation cell; that Terry did *not* spit or lunge at Ugbaja; and Ugbaja's only reason for taking Terry to the ground was Terry pacing back and forth and yelling at Ugbaja "fuck you bitch ass n**** you gone have to fight me now I want some pain," as they stood outside Terry's assigned isolation cell. *Doc. 145 at 8, ¶ 6.* As the video reveals, Ugbaja grabbed Terry's shoulders, rolled to the floor with Terry, straddled Terry to maintain control, and then held him down with his hands for less than two minutes. *Doc. 50.* The Court also assumes, for summary judgment purposes only, that during this process, Ugbaja placed his knee or knees in Terry's back for five seconds.[8]

Whether Ugbaja is entitled to qualified immunity is a two-prong inquiry, that requires the Court to determine if Terry has demonstrated: "(1) a deprivation of a constitutional right, and (2) that the right was clearly established at the time of the deprivation." *Robbins v. City of Des Moines*, 984 F.3d 673, 678 (8th Cir. 2021). While a district court may address the prongs in any order, it may not deny qualified

---

[8] Terry admits from his position face down on the floor, he could not tell if Ugbaja "placed one or both knees on [his] spine." *Doc. 159 at 7.*

immunity without answering both questions in the plaintiff's favor." *Watson v. Boyd*, 2 F.4th 1106, 1112 (8th Cir. 2021) (citation and internal quotations marks omitted).

### a. Terry Has Not Demonstrated a Deprivation of His Eighth Amendment Rights

"Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the 'core judicial inquiry' is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jones v. Shields*, 207 F.3d 491, 495 (8th Cir. 2000) (citing *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992)). Factors that inform this inquiry are: (1) "whether there was an objective need for force," (2) "the relationship between any such need and the amount of force used," (3) "the threat reasonably perceived by the correctional officers," (4) "any efforts by the officers to temper the severity of their forceful response," and (5) "the extent of the inmate's injury." *Ward v. Smith*, 844 F.3d 717, 721–22 (8th Cir. 2016) (citation omitted).

Based on Terry's own admissions, as he stood beside Ugbaja waiting to be placed inside the isolation cell, he threatened that he was going to fight Ugbaja and "wanted some pain." The language used by Terry was profane, graphically insulting to Ugbaja, and stated in a way that conveyed a direct threat to Ugbaja, who was only supported by a single female guard.

Terry's deposition testimony reveals that this was no ideal threat. Terry admits that he was "so enraged" that he actually wanted to fight Ugbaja. Terry Dep. 16:2–

5, *Doc. 151-4 at 17*. He further testified that, because he was taken to the ground before he could strike Ugbaja, "[t]here was never actually a fight". *Id.* at 16:6–9.

Ugbaja tempered the use of force by rolling to the ground with Terry, rather than slamming him to the floor. Ugbaja held Terry on the ground only until other guards arrived to assist him. The video of the incident makes it clear that the amount of force used by Ugbaja was reasonable and nothing in the video suggest that Ugbaja applied force willfully or maliciously to injure Terry.

Immediately after the incident, Terry was taken to the infirmary where photographs were taken, and he was examined by medical personnel. The examination revealed no injures to Terry, a finding that was supported by the photographs of the areas of his body he alleges were injured. Although Terry does not need to demonstrate a "significant injury" to demonstrate his excessive force claim, the lack of discernable injury is relevant to determining whether Ugbaja applied force "maliciously and sadistically" to cause harm. *Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010).

Based on these facts, viewed in a light most favorable to Terry, no reasonable juror could find that Ugbaja used excessive force against Terry during the May 11 incident. To the contrary, the undisputed facts establish that Terry was agitated and made a direct threat to physically harm Ugbaja. Ugbaja was only able to avoid the

imminent fight by taking Terry to the floor using only the force necessary to control him until other officers could arrive to assist him.

Because Terry has not met his burden to demonstrate he was deprived of a constitutional right, Ugbaja is entitled to qualified immunity under the first prong of the qualified immunity analysis.[9]

### b. Terry Has Not Demonstrated That Ugbaja Violated Clearly Established Law

Alternatively, Ugbaja is entitled to qualified immunity on the "clearly established" prong of the qualified immunity analysis. To determine whether a right is clearly established, the Court must conduct a "specific and particularized inquiry" to determine "whether the violative nature of <u>particular</u> conduct is clearly established ... in light of the specific context of the case." *Thurmond v. Andrews*, 972 F.3d 1007, 1012 (8th Cir. 2020); *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017) (emphasis in original) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). The burden is on the Terry to identify "controlling authority" or "a robust consensus of cases of persuasive authority" that would give a reasonable officer in Ugbaja's position a "fair warning" that his conduct was unconstitutional. *Kelsay v. Ernst*, 933 F.3d 975, 979 (8th Cir. 2019). "There need not be a prior case directly on point, but 'existing

---

[9] Because the facts, viewed in a light most favorable to Terry, do not demonstrate a violation of Terry's Eighth Amendment rights, Terry's Motion for Summary Judgment, which must be decided on facts viewed in a light most favorable to Ugbaja, necessarily fails.

precedent must have placed the statutory or constitutional question beyond debate.'" *Dillard v. O'Kelley*, 961 F.3d 1048, 1052 (8th Cir. 2020) (*en banc*) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011)).

Terry identifies four cases he believes are sufficiently analogous to the case at hand: *Jackson v. Crews,* 873 F.2d 1105 (8th Cir. 1989) (police officer slammed an arrestee's face into the sidewalk); *Treats v. Morgan*, 308 F.3d 868 (8th Cir. 2002) (officer sprayed prisoner in the face with pepper spray; second officer threw prisoner to the floor); *Santiago v. Blair*, 707 F.3d 984 (8th Cir. 2013) (officers tightened prisoner's handcuffs to the "crushing point," dug fingers into his arm, slammed his face and body into the wall, sprayed him with pepper spray, and threw him to the floor); *Wilkins v. Gaddy*, 559 U.S. 34 (2010) (officer slammed prisoner onto concrete floor and then punched, kicked, and choked him).

In only two of those cases—*Jackson* and *Treats*—did the Court directly address the excessive force claim.[10]  Thus, it follows that those are the only two cases Terry has presented that can clearly establish that Ugbaja's actions violated Terry's Eighth Amendment rights. However, both those cases are materially distinguishable from the case at hand.

---

[10] In *Santiago* and *Wilkins*, the case was remanded for further proceedings. *Santiago,* 707 F.3d at 990 (remanding because the district court erred in applying the Fourth Amendment excessive force standard); *Wilkins v. Gaddy*, 559 U.S. at 40 (remanding because the district court erred in dismissing Eighth Amendment claim based on the allegedly *de minimis* nature of the injuries).

In the *Jackson* case, a police officer chased after a fleeing arrestee, handcuffed him, and then slammed his face into the pavement. *Jackson*, 873 F.2d at 1107. It is doubtful that a case involving a *police* officer applying force on a free-world *arrestee* could place a reasonable *corrections* officer on notice that his actions would violate a *prisoner's* constitutional rights. [11] Even so, as previously discussed, Terry's allegation that he had his face slammed into the ground was directly contradicted by the video footage. Thus, this case does not "clearly establish" that Ugbaja's actions of rolling Terry to the floor and allegedly placing his knee in Terry's back for five seconds violated the Eighth Amendment prohibition against cruel and unusual punishment.

In the *Treats* case, as the plaintiff was walking away from a prison guard, the guard "sprayed him in the face with a prolonged burst of capstun pepper spray," without warning. *Treats*, 308 F.3d at 870. Another guard, seeing the commotion, ran over and slammed the plaintiff to the ground. *Id.* The Eighth Circuit found that the *unthreatening, unresisting* plaintiff had demonstrated an unconstitutional use of force sufficient to survive summary judgment. Because Terry indisputably made a

---

[11] Because the *Jackson* decision, dated May 1, 1989, slightly predated the Supreme Court's decision in *Graham v. Connor*, 490 U.S. 386 (May 15, 1989), that arrestee excessive force case used the same standard applied in prisoner excessive force cases. In *Graham,* the Court held that an arrestee's excessive force claim should be analyzed under the Fourth Amendment's "objective reasonableness" test, not the Eighth Amendment's "malicious and sadistic" inquiry. *Graham*, 490 U.S. at 388.

threat to fight Ugbaja, and was not pepper sprayed or "slammed" to the floor, he cannot rely on *Treats* to clearly establish that Ugbaja's actions violated the Eighth Amendment.

All the cases presented by Terry for the clearly established prong of the qualified immunity analysis rely on his disproved assertion that he was "slammed" to the ground. He does not attempt to provide any cases addressing his allegation that Ugbaja placed a knee in his back while restraining him.

After searching for relevant precedent, the Court has not identified any Eighth Amendment excessive force cases that found a knee placed in a prisoner's back violated his constitutional rights.[12] Thus, assuming Ugbaja placed a knee in Terry's back for no more than five seconds, those actions did not violate a clearly established right.

The facts, viewed in a light most favorable to Terry, do not demonstrate that Terry suffered a deprivation of a clearly established constitutional right.

---

[12] The United States Supreme Court and Eighth Circuit have addressed similar conduct in the *Fourth* Amendment context. *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4 (2021) (holding that "placing his knee on suspect's back for no more than eight seconds, and only on the side of his back near the knife that officers were in the process of retrieving, did not violate a clearly established right against excessive force"); *Perry v. Woodruff Cnty.*, 858 F.3d 1141, 1146 (8th Cir. 2017) (officer violated clearly established right of unresisting and unthreatening arrestee by restraining his arm and forcing knee into his back); *White v. Jackson*, 865 F.3d 1064, 1080 (8th Cir. 2017) (finding it was not unreasonable for a police office to restrain an arrestee, who was reasonably perceived to be part of a violent crowd, by placing a knee on his back while handcuffing him).

Accordingly, Ugbaja is entitled to qualified immunity, in his individual capacity, and his Motion for Summary Judgment should be granted.

To the extent Terry seeks to sue Ugbaja, in his official capacity,[13] "that claim necessarily fails for lack of an underlying violation." *Newport v. Payton*, No. 21-3795, 2023 WL 116480, at *2 (8th Cir. Jan. 6, 2023) (citing *Watson*, 2 F.4th at 1114; *Meier v. St. Louis*, 934 F.3d 824, 829 (8th Cir. 2019)).

### B.    Coney's Motion for Summary Judgment

On May 12, 2022, Coney filed a Motion for Summary Judgment (*Doc. 129*), Statement of Material Facts (*Doc. 129-4*), and Brief in Support (*Doc. 129-5*) arguing that Terry failed to exhaust his failure-to-protect claim against her. Terry filed Responses to the Motion for Summary Judgment and the Statement of Material Facts. *Doc. 132; Doc. 133*. Thus, the issues are joined and ready for disposition.

### 1.    The PLRA Requires Prisoners to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies before filing a § 1983 action: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §

---

[13] *See* Terry's Complaint, *Doc. 2 at 2* (indicating that all Defendants are being sued in their "official and personal capacity").

1997e(a). The PLRA's exhaustion requirement is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Muhammad v. Mayfield,* 933 F.3d 993, 1000 (8th Cir. 2019).

The PLRA requires inmates to: (1) fully and properly exhaust their available administrative remedies as to each claim that is later raised in a § 1983 action; and (2) complete the exhaustion process before initiating the § 1983 action. *Jones,* 549 U.S. at 211, 219-20, 223–24; *Woodford*, 548 U.S. at 93–95; *Burns v. Eaton,* 752 F.3d 1136, 1141–42 (8th Cir. 2014). Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Thus, to satisfy the PLRA, a prisoner must comply with the exhaustion requirements of the incarcerating facility before he can properly file a § 1983 action.

The ADC provides the following three-step administrative process that prisoners must comply with to exhaust non-emergency grievances raising "complaints, problems and other issues." ADC Administrative Directive 19-34 ("AD 19-34").

### 2. Terry Did Not Exhaust His Available Administrative Remedies Against Coney

In support of her Motion for Summary Judgment, Coney attaches the affidavit of the ADC's Inmate Grievance Appeal Coordinator, Lakisha Lee ("Lee"). *Doc.*

*129-1.* Lee reviewed the grievances filed by Terry during the relevant time period and identified only one grievance that mentioned Coney: EAM20-01223. *Id. at 6, ¶ 28.*

Terry pursued EAM20-01223 through all three steps of the ADC's administrative process but did not make any complaints about Coney failing to intervene and protect him from Ugbaja. *Doc. 129-2.* Instead, Terry only listed Coney as a witness to the May 11, 2020 excessive force incident. *Id. at 1* (The May 11, 2020 excessive force "incident was witnessed by…Cpl. M. Coney…and the incident was on camera."). Because Terry did not raise a failure-to-intervene and protect claim against Coney in EAM20-01223, he cannot rely on that grievance to show he *properly exhausted* his administrative remedies against Coney.

In his Response, Terry admits that he did not exhaust his administrative remedies against Coney but argues that the administrative grievance process was "made unavailable" to him.[14] Specifically, he argues that "the evil intent of

---

[14] In *Ross v. Blake*, 578 U.S. 632 (2016), the Court described three ways in which an administrative remedy can be made "unavailable" to an inmate:

> First,…an administrative procedure is unavailable when…it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.
>
> *****
>
> Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use…When rules are "so confusing that ... no reasonable prisoner can use them," then "they're no longer available."
>
> *****
>
> And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or

Defendant M. Coney was not discovered until the discovery between the parties." *Doc. 133 at 1, ¶ 5*. In other words, he claims he did not make a complaint against Coney for failing to intervene and protect him from the excessive force incident because, "prior to discovery [he] believed that in actuality Defendant Coney made good-effort to at least call for back up to get Defendant Ugbaja off [his] spine." *Id.* Now, after discovery, he believes that Coney "co-conspired" with Ugbaja to write a "falsified incident report" regarding the May 11 incident. *Id. at 2*.

At the time Terry filed EAM20-01223 raising his excessive force claim against Ugbaja, Terry was well-aware that Coney was present during the May 11, 2020 incident and took no affirmative actions to intervene. If he wanted to file a failure-to-intervene and protect grievance against Coney, he knew how to do so. Terry's excuse for not grieving this complaint against Coney has nothing to do with being "thwarted" from filing a grievance against Coney.

Because the ADC's administrative process was available to Terry and he failed to fully and accurately use that process to make any claims against Coney, he failed to properly exhaust his administrative remedies against her. Accordingly, Coney's Motion for Summary Judgment should be granted.

---

intimidation…And appellate courts have addressed a variety of instances in which officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures.

*Id.* at 643–44 (internal citations omitted).

**C.    Terry's Motion to Voluntarily Dismiss His Claims Against Maiden**

On June 28, 2022, Terry filed a Motion for Voluntary Dismissal. *Doc. 142*. He states that, because he cannot remember the dates of Maiden's alleged sexual harassment, he is unable to produce any evidence in support of that claim. *Id.* Therefore, he moves for voluntary dismissal of his claim against Maiden under Rule 41 of the Federal Rules of Civil Procedure. *Id.* Maiden, through his attorney, has no objection to the Motion. *Doc. 151-4 at 8–9*.

Accordingly, the Court should grant Terry's Motion for Voluntary Dismissal and his sexual harassment claims against Maiden should be dismissed, with prejudice.

**D.    Terry's Motion for Preliminary Injunction**

Finally, Terry has filed a Motion for Preliminary Injunction. *Doc. 135*. Terry states that, since initiating this lawsuit and several other § 1983 actions, "non party Levy Watson has held [his] privileged mail for over a month and weeks at a time" and that the delay in receiving his legal mail is "impeding" and "frustrating" this litigation. *Id. at 1*.

The purpose of a preliminary injunction is "to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994). The party requesting a preliminary injunction must "establish a relationship between the injury

claimed in the party's motion and the conduct asserted in the complaint." *Id.*

Here, Terry's Motion for Preliminary Injunction has nothing to do with preserving the Court's decision-making power over the merits of this § 1983 action. Rather, Terry's Motion is based on *new* allegations of misconduct that are *entirely different from* his excessive force claim against Ugbaja, his failure to intervene claim against Coney, or his sexual harassment claim against Maiden.

If Terry wishes to pursue these new claims, he must file a separate § 1983 action against "Levy Watson" or other parties who are interfering with his legal mail. However, Terry cannot raise those separate and distinct claims as a basis for a preliminary injunction in this lawsuit. *Owens v. Severin*, 293 F. App'x 425 (8th Cir. 2008) (affirming denial of prisoner's request for a preliminary injunction because "the relief sought was unrelated to the allegations in his [§ 1983] complaint").

Accordingly, Terry's Motion for Preliminary Injunction should be denied.

### III.  Conclusion

For the foregoing reasons, IT IS RECOMMENDED that:

(1)    Terry's Motion for Summary Judgment (*Doc. 144*) be DENIED.

(2)    Ugbaja's Motion for Summary Judgment (*Doc. 151*) be GRANTED.

(3)    Terry's Eighth Amendment excessive force claim against Ugbaja, be DISMISSED, with prejudice.

(4)    Conley's Motion for Summary Judgment (*Doc. 129*) be GRANTED.

(5)    Terry's failure to intervene claim against Conley be DISMISSED, without prejudice.

(6)    Terry's Motion for Voluntary Dismissal (*Doc. 142*) be GRANTED.

(7)    Terry's sexual harassment claim against Maiden be DISMISSED, with prejudice.

(8)    Terry's Motion for Preliminary Injunction (*Doc. 135*) be DENIED.

(9)    Judgment be entered accordingly,[15] and this case, in its entirety, be CLOSED.

DATED this 30th day of January, 2023.

_____
UNITED STATES MAGISTRATE JUDGE

---

[15] All other claims were previously dismissed without prejudice. *Doc. 116*.